Leroy HADDEN, Appellant,

v.

James **HOWARD**, William **Robinson**, Charles **Kozakiewicz**, Robert **Maroney**, James **Wigton**, Thomas **Seiverling**, Anthony **Pace**, and Michael **Boris**, Appellees.

No. 82–5296.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Jan. 24, 1983.

Decided Aug. 11, 1983.

Jere Krakoff, Neighborhood Legal Services Ass'n, Pittsburgh, Pa., for appellant.

Sheila M. Ford, Deputy Atty. Gen., Pittsburgh, Pa., for appellees.

Before SEITZ, Chief Judge, and ADAMS and GARTH, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Leroy Hadden appeals from an order of the district court dismissing his civil rights claim. He contends that his right to due process was violated when the Pennsylvania Bureau of Corrections punished him for slanderous remarks about prison personnel made in an internal complaint that he filed against a prison guard. This Court has jurisdiction under 28 U.S.C. § 1291 (1976).

I.

Appellant Hadden is an inmate at the State Correctional Institution at Pittsburgh, Pennsylvania (SCIP); appellees are present or former employees of the Pennsylvania Bureau of Corrections. On September 15, 1980 Hadden filed a civil rights complaint seeking damages and declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 & 2202, asserting jurisdiction under 28 U.S.C. § 1343 and 28 U.S.C. § 1331. Hadden alleged that appellees violated his constitutional rights when they sentenced him to a thirty day term in a segregation disciplinary unit for slanderous remarks about prison personnel.

In accordance with Rule 4 of the Local Rules for Magistrates, the district court referred the case to a magistrate for an evidentiary hearing. After this hearing, the magistrate issued proposed findings of fact, conclusions of law, and a recommendation that the district court dismiss the complaint. Hadden filed objections to the magistrate's report and recommendation. Upon a de novo determination pursuant to Rule

4(b) of the Local Rules for Magistrates, the district court dismissed Hadden's complaint. Hadden filed a timely notice of appeal.

## II.

The relevant facts underlying the appeal are undisputed. On September 11, 1979 Hadden filed a complaint under the Inmate Complaint Review System, 37 Pa.Code §§ 95.131–95.133 (1976), alleging that a prison guard, Michael Boris, had forced him to engage in homosexual acts. The Special Services Division of the Pennsylvania Bureau of Corrections conducted an investigation of Hadden's complaint, which included interviews of several parties and a polygraph test of Hadden, and concluded that Hadden's allegations were false. Hadden's complaint was dismissed on September 18, 1979.

On January 11, 1980, disciplinary charges were filed against Hadden accusing him of making "unfounded, slanderous and derogatory statements about SCIP personnel," in violation of 37 Pa.Code § 95.102a(b).[1] After due notice, a hearing was held. At the hearing, Hadden took the position that section 95.131(c) of the Code[2] gives him the right to file the complaint and immunizes him from discipline for any statements in the complaint, even [those of a maliciously defamatory nature. The prison disciplinary tribunal found that Hadden's statement was a "deliberate attempt to degrade the character of [the guard]" and that section 95.131(c) did not provide immunity for such statements. Hadden was then sentenced to a thirty day term in a disciplinary unit. The imposition of this disciplinary sanction was sustained by a prison review committee.

During the course of the disciplinary proceedings, Hadden requested that the Commissioner of the Pennsylvania Bureau of Corrections, William Robinson, intervene on his behalf. Commissioner Robinson refused to do so because, as he explained in a January 22, 1982 letter to Hadden, section 95.131(c) does not immunize "maliciously untrue" statements.

After Hadden completed his term in the disciplinary unit, he filed a complaint in the district court under 42 U.S.C. § 1983, alleging that the discipline imposed upon him violated his fourteenth amendment right to due process. The magistrate to whom the matter was referred conducted a hearing and made findings of fact which were adopted by the district court. The findings relevant to the issues present in this appeal are:

3. On September 10, 1979, defendant Boris charged plaintiff with threatening an officer, refusing to obey an order and attempted intimidation of an officer.

4. On September 11, 1979, plaintiff filed an official inmate complaint charging defendant Boris with forcing him to engage in homosexual conduct in June or July, 1979.

5. On September 18, 1979, plaintiff was advised that his complaint against defendant Boris was dismissed. Plaintiff was further advised by defendant Thomas W. Seiverling, the inmate complaint officer, that "no inmate shall be disciplined for filing a complaint or otherwise pursuing a remedy in the complaint system, but no immunity is afforded herein to any person from civil or criminal liability for any of his acts or statements."

\* \* \* \* \* \*

9. Defendant Kozakieweiz filed a misconduct [charge] against plaintiff, charging him with making unfounded, slanderous and derogatory statements about defendant Boris because the facts set forth

---

1. 37 Pa.Code § 95.102a(b) lists various types of misconduct and § 95.102a(a) provides that behavior constituting any of the listed misconduct "shall be deemed a violation of rules and regulations in all Commonwealth correctional facilities," subjecting the inmate to punishment. The misconduct listed in subsection (b) includes "(25) Lying to an employe [sic]" and "(31) Insolence or disrespect toward a staff member."

2. 37 Pa.Code § 95.131(c) provides:

(c) No inmate shall be disciplined for filing a complaint or otherwise pursuing a remedy in the Complaint System, but no immunity is afforded by §§ 95.131–95.133 of this title (relating to inmate complaint review system), to any person from civil or criminal liability for any of his acts or statements.

in plaintiff's inmate complaint against defendant Boris charging him with having forced plaintiff to engage in homosexual acts, had been found to be untrue by an investigation by Conner Blaine, Special Investigator for the Bureau of Corrections. The charges were not based upon plaintiff's having filed an inmate complaint but rather upon the determination that the facts set forth in plaintiff's complaint were untrue, slanderous and derogatory toward defendant Boris.

\* \* \* \* \* \*

12. Administrative Directive 801 of the Bureau of Corrections lists the following class one misconducts [sic]—No. 25, lying to an employee and No. 31, insolence or disrespect toward a staff member. The inclusion of these misconducts [sic] in the administrative directive put plaintiff on notice that he could be punished if he were to file an inmate complaint against a prison official falsely charging him with forcing plaintiff to engage in homosexual conduct.

*App.* at A–33 to A–35.

Hadden has not challenged these findings of fact. Nor has Hadden challenged the district court's conclusion that the misconduct violations with which he was charged are fully specified in 37 Pa.Code § 95.102a and that they were drawn up and made available to each inmate in accordance with 37 Pa.Code § 95.102.[3]

Consequently, it appears that when Hadden filed his complaint he was, or should have been, aware of the relevant misconduct regulations, 37 Pa.Code §§ 95.-102a(b)(25) (lying to an employee) and (31) (insolence or disrespect toward a staff member). Violation of either or both of these regulations provided for the very discipline that was ultimately imposed on him.

### III.

In this appeal, Hadden advances two primary contentions. First, he maintains that the district court erred when it deferred to the Commissioner's interpretation of the regulation at issue. Second, he claims that he was arbitrarily deprived of liberty in violation of the fourteenth amendment when he was placed in disciplinary confinement despite the provisions of section 95.-131(c). Appellant's Brief at iv, 5 & 12.

Hadden maintains that section 95.131(c) prohibits disciplinary action based on the substance of a complaint as well as the act of filing a complaint. The Magistrate disagreed with Hadden's interpretation of that provision, deferring instead to Commissioner Robinson's construction of the section. In his letter to Hadden, Robinson said "[t]here is nothing to prevent you from filing an official inmate complaint at any time you desire. However, this does not preclude your liability for charges made against an officer which are subsequently found to be maliciously untrue." The district court gave similar deference to the Commissioner's interpretation of section 95.131(c).

■ Our standard of review is limited by the "wide-ranging deference" due prison administrators in the "adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). In upholding the prison officials' decision that a specific rule was needed, the Court in *Wolfish* stated that "it is enough to say that [the prison officials] have not been conclusively shown to be wrong in this view," 441 U.S. at 555, 99 S.Ct. at 1882, quoting *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977).

■ Interpreting 37 Pa.Code § 95.131(c) so as to prevent circumvention of misconduct regulations appears to be a reasonable response to a legitimate security concern. If it is possible for inmates maliciously to lie and maliciously to show disrespect toward prison staff members, merely by do-

---

**3.** 37 Pa.Code § 95.102 requires publication of standards of behavior in the form of administrative directives. These directives are required to be published by the distribution of individual copies to each inmate and must be posted on bulletin boards. In addition, each directive must be fully explained in inmate orientation sessions.

ing so within the context of filing an inmate complaint, then serious problems of staff morale and prison discipline may reasonably be expected to arise. *See Bell v. Wolfish, supra,* 441 U.S., at 546–47, 99 S.Ct. at 1877–78. Indeed, Hadden has not disputed the legitimacy of those regulations that proscribe lying to an employee (37 Pa.Code § 95.102a(b)(25)) and showing insolence or disrespect toward a staff member (37 Pa. Code § 95.102a(b)(31)), both of which were obviously adopted for purposes of prison discipline and the preservation of internal security. Nor does Hadden claim that he was unaware that violation of either of these regulations would make him subject to punishment. Thus, given the institutional objectives served by the regulations, under *Bell v. Wolfish* we may not depart from the Commissioner's interpretation of section 95.131(c) unless it is inconsistent with the language or purpose of the regulation.

Section 95.131(c) is designed to encourage inmate use of the Complaint Review System by assuring prisoners that filing a complaint will not result in disciplinary reprisals. An interpretation of Section 95.131(c) that would frighten or chill prisoners from filing complaints would be inconsistent with that provision. For example, it would not appear to be a reasonable interpretation to say that the regulation protects the physical act of filing, but affords no protection for harmless or inadvertent errors in the statement of the complaint, since a penalty for honest mistakes would have a substantial chilling effect. That, however, is not the situation presented by this case. Under the Commissioner's interpretation of the regulation, only "maliciously untrue" statements are punishable; inmates are immune from discipline for any other type of statement.

Although the phrase "maliciously untrue" may be somewhat vague when viewed in isolation, the decision of the disciplinary tribunal has clarified the type of conduct section 95.131(c) leaves unprotected. Hadden was disciplined for "lying in a deliberate attempt to degrade the character of [the guard]." Misconduct Report No. 56855, *App.* at A–53. We believe that this later language makes clear that "maliciously untrue" is the equivalent of knowingly false statements made by an inmate to harm another person. There is no basis for assuming that the Bureau, in establishing the Complaint Review System, wanted to encourage or protect inmates who file maliciously untrue charges. Thus, even if we were not required to defer to the Commissioner's interpretation of section 95.131(c), as we are, we would in any case hold that, in light of the purposes to be served by the Complaint Review System, it was reasonable for Commissioner Robinson to interpret the regulation not to immunize the making of "maliciously untrue" statements because they happen to be made in a complaint rather than in some other form.

### IV.

■ Hadden's second contention on appeal is that he was arbitrarily deprived of the liberty interest created by section 95.-131(c). This argument is based entirely on Hadden's position that the statements made in his complaint were protected by that provision. If the statements were protected by section 95.131(c), he maintains, it was a denial of due process for prison officials to punish him for making those statements.

In *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1973), the Supreme Court held that prison regulations which limit to certain circumstances the authority of prison officials to discipline inmates create an expectation in inmates that qualifies as a liberty interest protected by due process. Thus, an expectation that adverse action will not be taken against a prisoner except when he engages in proscribed activity, creates a liberty interest protected by due process. Here, as we have observed, the process due to Hadden was afforded. A hearing was held, and findings were made that Hadden's statements were "a deliberate attempt to degrade the character of the guard." *App.* at A–25. Hadden has never attacked these findings of fact, nor has he denied that he was afforded the due process to which he is entitled under the precepts of *Wolff v. McDonnell.* Rather, he has argued that section 95.131(c) immunized all of the statements in the internal complaint, even those that were knowingly false and malicious. We have

already held, however, in Section III, *supra,* that the Commissioner's interpretation of the regulation, in light of the *Wolfish* standard and the circumstances of this case, must prevail and therefore knowingly false and malicious statements made in a complaint are not protected.

One could argue that a person in Hadden's position could have mistakenly, yet reasonably believed that section 95.131(c) provided complete immunity and that it is thus unfair to penalize Hadden for his statements. A difference of opinion over the equities of this situation, however, is not alone sufficient to enable us to find a due process violation. In *Bell v. Wolfish,* the Supreme Court emphasized that "courts should defer to the informed discretion of prison administrators because the realities of running a corrections institution are complex and difficult, courts are ill-equipped to deal with these problems, and the management of these facilities is confided to the Executive and Legislative Branches, not to the Judicial Branch." 441 U.S. at 547 n. 29, 99 S.Ct. at 1878 n. 29 (citations omitted). Consequently, Hadden's claim that he was arbitrarily deprived of a liberty interest was properly rejected by the district court.

### V.

 Out of an abundance of caution, we will address a third contention which, though not specifically set forth, appears to be implicit in Hadden's brief. He seems to argue that he was denied due process because he was not given "fair notice", i.e., adequate warning that section 95.131(c) did not immunize the conduct for which he has been punished—slandering a prison official. *See generally Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), and *Kolender v. Lawson,* —— U.S. ——, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). The magistrate found that Hadden was on notice that lying to an employee and show-

ing insolence or disrespect toward a staff member were punishable misconduct and that filing a maliciously untrue complaint fell within those categories. Finding of Fact 12, *App.* at A–35. Indeed, nothing in the record indicates that Hadden even knew of the immunity provision in section 95.-131(c) when he filed his complaint.[4] If he did not know of that purported protection, then there is no reason why he would not have assumed that the statements in question were punishable under the misconduct provisions of 37 Pa.Code §§ 95.102a(b)(25) and (31).

Even if Hadden had been aware of section 95.131(c), the apparent conflict between its grant of administrative immunity and the misconduct prohibitions in sections 95.102a(b)(25) and (31) should have put him on notice that he would be proceeding at his peril if he included maliciously defamatory statements in his internal complaint. See *Meyers v. Alldredge,* 492 F.2d 296, 311 (3d Cir.1974); *Landman v. Royster,* 333 F.Supp. 621, 656 (E.D.Va.1971) (quoted in *Meyers, supra,* 492 F.2d at 311). Hadden could not reasonably assume that conflicts between section 95.131(c) and the misconduct regulations would be resolved in his favor.

Moreover, when faced with any such questions regarding the proper application of prison misconduct regulations, there is a real danger that

> "legalistic wrangling over whether a rule was broken may visibly undermine the administration's position of total authority, necessary for security's sake."

*Meyers, supra,* 492 F.2d at 311. It is for this reason, among others, that courts have consistently concluded that interpretations by prison authorities must be upheld unless fair notice was clearly lacking. *See, Meyers, supra,* 492 F.2d at 310–311.

Here it is clear that the required fair notice had been given to Hadden. Indeed the district court so found. *App.* at A–35.[5]

---

4. As the findings of fact make clear, officer Boris filed charges against Hadden on September 10. On September 11, Hadden filed his complaint against Boris, evidently in retaliation. On September 18, Hadden was advised about the complaint provisions of § 95.131(c).

5. As Justice White pointed out in his concurrence to *Smith v. Goguen,* 415 U.S. 566, 584, 94 S.Ct. 1242, 1253, 39 L.Ed.2d 605 (1974), it could even be said that

> [i]t is self-evident that there is a whole range of conduct that anyone with at least a semblance of common sense would know [consti-

Certainly Hadden knew, and it was so found, that in charging Boris with forcing him to engage in homosexual conduct, Hadden had lied in a deliberate attempt to degrade the character of a prison guard. The fact that Hadden chose the vehicle of an inmate complaint as the means of violating the misconduct regulations cannot undo the fact that he knew such conduct to be in violation of the prison's rules. This knowledge is sufficient to satisfy the constitutional requirement for fair notice in a prison context.

## VI.

Hadden advanced three arguments in support of his claim: (1) that it was improper to defer to Commissioner Robinson's interpretation of section 95.131; (2) that in adhering to the Commissioner's interpretation, Hadden's due process rights were violated, and (3) that Hadden was denied "fair notice" of the wrongfulness of his conduct. The facts found by the magistrate do not establish a violation of Hadden's due process rights under any of these theories. Accordingly the judgment of the district court will be affirmed.

SEITZ, Chief Judge, dissenting.

There is no doubt, as the majority acknowledges, that 37 Pa.Code § 95.131(c) creates a due process, liberty interest on behalf of inmate Leroy Hadden. Section 95.131(c) provides that:

> No inmate shall be disciplined for filing a complaint or otherwise pursuing a remedy in the Complaint System, but no immunity is afforded by [this regulation] to any person from civil or criminal liability for his statements.

Hadden's liberty interest exists by virtue of the explicit use of mandatory language in the regulation limiting the circumstances under which he may be disciplined for invoking the Complaint Review System. *See Hewitt v. Helms,* —— U.S. ——, 103 S.Ct. 864, 867, 74 L.Ed.2d 675 (1983) (repeated use of mandatory language limiting circum-

stances under which inmates may be confined to Administrative custody gives rise to liberty interest).

My disagreement with the majority concerns the scope of the liberty interest created by Section 95.131(c). The majority defers to an interpretation of Section 95.131(c) offered by Commissioner Robinson, who in a letter to Hadden said that "[t]here is nothing to prevent you from filing an official inmate complaint at any time you desire. However, this does not preclude your liability for charges made against an officer which are subsequently found to be maliciously untrue." Preliminarily, I agree that we must accept the Commissioner's interpretation unless it is plainly erroneous or inconsistent with the purpose of the regulation. *Lukens Steel v. Klutznick,* 629 F.2d 881, 886 (3d Cir.1980); *see Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979) (institutional decisions of prison officials entitled to deference unless shown to be conclusively wrong).

The first clause of Section 95.131(c) provides that "[n]o inmate shall be disciplined for filing a complaint." As Hadden points out, it would be wholly unreasonable to conclude that the drafters of the regulation intended the words "filing a complaint" to designate only the act of tendering a piece of paper to prison officials. Unless those words also encompass the process of articulating a grievance, the disciplinary immunity afforded by Section 95.131(c) would be meaningless.

I can find no support in the language of Section 95.131(c) for Commissioner Robinson's suggestion that the disciplinary immunity granted by the regulation does not extend to inmate complaint statements which are found to be maliciously untrue. If the drafters of the regulation had intended to include such a limitation, one would expect to find it in the second clause of the Section, which delineates what potential liabilities are not included within the immunity granted by the Section.[1] The conspicu-

---

tutes lying and insolence] and that would be covered by the [regulation] if directed at [prison officials]. In these instances, there would be ample notice to the actor and no

room for undue discretion by enforcement officers.

1. It is illuminating in this context to compare other prison regulations which govern inmate

ous absence of disciplinary immunity for statements found to be in bad faith from the list of non-immunized liabilities can lead to only one conclusion: the drafters of Section 95.131(c) intended the regulation to immunize from disciplinary immunity both the act of tendering an inmate complaint, as well as any statement made in a complaint regardless of whether it is subsequently found to be in bad faith.

Implicit in the majority's defense of the Commissioner's interpretation of Section 95.131(c) is that it is proper to read into the immunity provisions of that regulation limitations derived from other prison regulations which specify the grounds upon which a prisoner may be disciplined. In particular, the majority relies upon 37 Pa.Code § 95.102(a), which permits disciplinary action for an inmate's lying to an employee. In my view, Section 95.121(c) was designed to stand by itself as a comprehensive statement of the immunity which is and is not granted for an inmate's use of the Complaint Review System. Section 95.131(c) contains no language directing a court, or an inmate, to look elsewhere for further elaboration of what disciplinary action may result from an inmate's use of the Review System.

Thus, I would reject Commissioner Robinson's interpretation because it reads into Section 95.131(c) a limitation inconsistent with the clear language of the regulation. *See e.g., Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1385, 47 L.Ed.2d 668 (1976) (language of statute controls its interpretation when sufficiently clear in context); *Bouie v. City of Columbia,* 378 U.S. 347, 362–63, 84 S.Ct. 1697, 1707–08, 12 L.Ed.2d 894 (1964) (generally speaking, court is not justified in departing from plain meaning of words in search of an interpretation of a statute which the words themselves do not suggest).

Even if it were necessary to look beyond the clear language of Section 95.131(c) to determine its relevant meaning for this case, I would hold that Commissioner Robinson's interpretation is legally unacceptable. The purpose of Section 95.131(c), as the majority puts it, is "to encourage inmate use of the Complaint Review System by assuring prisoners that filing a complaint will not result in disciplinary reprisals." Maj. Op. at 1007.

The Commissioner's interpretation of Section 95.131(c), however, would tend to discourage inmates having good faith claims from invoking the Complaint Review System. Because the decision whether a statement was *maliciously* untrue is made by prison officials, these inmates may be expected to fear that any rejected grievance may result in a disciplinary reprisal. This chilling effect is clearly inconsistent with the purpose of Section 95.131(c) as articulated by the majority.

The appellees admit that Hadden was disciplined because of statements he made in an inmate complaint filed under the Complaint Review System. Because Section 95.131(c) creates a liberty interest on behalf of Hadden that he may not be disciplined for such statements, I would hold that appellees arbitrarily deprived Hadden of a liberty interest in violation of the Fourteenth Amendment. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1973); *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1979).

In addition to addressing Hadden's due process claim based on an arbitrary deprivation of liberty, the majority goes on to consider whether Hadden lacked fair notice that he could be disciplined for making maliciously untrue statements in an inmate complaint. Aside from the fact that Hadden has not relied upon a fair notice claim on appeal,[2] I need not address this argu-

---

complaints brought against other prisoners. 37 Pa.Code §§ 95.1–95.12 (1971). Section 95.-10(a) provides that "no inmate shall be disciplined for making a complaint against another inmate...." Section 95.10(b) states that "[a]ny inmate who makes a complaint against any other inmate which upon investigation is determined to be false or unsupported, shall be

liable to such disciplinary measures deemed appropriate by the behavior clinic."

2. The majority states that the fair notice argument is "implicit" in *Hadden's Wolff v. McDonnell* claim. Maj. Op. at 1008. It seems to me that a party either makes an argument on appeal, or he doesn't. In this case, Hadden's appellate brief does not once mention fair no-

ment because fair notice presumes that punishment is authorized by the statute or regulation in question. As I have stated, appellees were not authorized to discipline Hadden based on the statement he made in an inmate complaint, because of the immunity provisions of Section 95.131(c).

Because I believe even the benighted are entitled to fundamental fairness, I dissent.

tice, nor does it cite the seminal Third Circuit fair notice case, *Meyers v. Alldredge,* 492 F.2d 296 (3d Cir.1974), upon which Hadden relied in

presenting a fair notice claim before the United States Magistrate.