186 P.3d 1094 (2008)
Allan PARMELEE, Appellant,
v.
Robert O'NEEL; Robert Monger; Harold Clarke, Eldon Vail; Lynn Delano, Kathryn Bail; Carroll Riddle; Sandra Carter; John Palmer; John Aldana; Sandra Diimel; Jerry McHaffie; Tina Adams; Nathan Cornish; Michael Erlenmeyer; unknown others, and the community partners of each named Defendant, Respondents.
No. 35652-0-II.
Court of Appeals of Washington, Division 2.
June 19, 2008.
*1096 Hank L. Balson, Public Interest Law Group, Seattle, WA, for Appellant.
Amanda Marie Migchelbrink, Attorney at Law, Daniel John Judge, Attorney General's Office, Olympia, WA, for Respondents.
Eric Stahl, Davis Wright Tremaine LLP, Seattle, WA, Aaron Hugh Caplan, Los Angeles, CA, Sarah A. Dunne, ACLU, Kristina Silja Bennard, Davis Wright Tremaine LLP, Seattle, WA, Amicus Curiae on behalf of American Civil Liberties Union of Washington Foundation.
BRIDGEWATER, J.
¶ 1 Allen[1] Parmelee, a Department of Corrections (DOC) inmate, appeals from the dismissal of his suit for damages and for an injunction against DOC for violating his First Amendment rights, and his due process rights, and retaliating against him for exercising his First Amendment rights. We hold that when DOC infracted Parmelee for referring to Sandra Carter, the superintendent of Clallam Bay Correctional Center, as "anti-male  a lesbian" in a letter to DOC Secretary, it based the infraction on the criminal libel statute under RCW 9.58.010. We hold that the criminal libel statute is facially unconstitutional for overbreadth and vagueness. Because DOC based Parmelee's infraction on an unconstitutional statute, we vacate the infraction.
¶ 2 We further hold that the trial court erred when it dismissed Parmelee's retaliation *1097 claim under CR 12(b)(6) because, based on his pleadings, Parmelee may be able to prove a set of facts that would justify recovery: Parmelee was in litigation against DOC officials, he made critical statements against DOC staff and policy, and DOC did not issue the infraction until three months after he had attempted to send his critical letter to the DOC secretary. We reverse the trial court's dismissal under CR 12(b)(6) and remand to the superior court, where Parmelee may assert his claims for damages against DOC for violating his substantive due process rights, for violating his First Amendment rights, and for retaliating against him for exercising his rights.

FACTS
¶ 3 Parmelee is a Washington State inmate in the custody of DOC. He describes himself as outspoken and politically active. He has written prisoner self-help books, news articles, and press releases regarding prisoner rights. Parmelee is often critical of DOC staff, policies, and operations.
¶ 4 On July 20, 2005, Parmelee tried to send a letter to DOC Secretary Harold Clarke, complaining about the conditions and programs at Clallam Bay Corrections Center (CBCC). In the letter, Parmelee stated that CBCC Superintendent Sandra Carter was "anti-malea lesbian."[2] CP at 717. He also speculated that "[h]aving a man-hater lesbian as a superintendent is like throwing gas on [an] already smoldering fire." CP at 718. DOC intercepted the letter, preventing it from leaving the institution.
¶ 5 Three months later, on October 14, 2005, DOC issued a serious infraction against Parmelee under former WAC 137-28-260(1)(517) (2005),[3] for "[c]ommitting any act that is a misdemeanor under local, state, or federal law that is not otherwise included in these rules." Prison officials infracted Parmelee under this disciplinary rule for violating Washington's criminal libel statute, RCW 9.58.010. Specifically, DOC claimed that his letter to Secretary Clarke "IS CONSIDERED TO BE LIBLOUS [sic] AND SLANDERS THE CHARACTER AND REPUTATION OF SUPERINTENDENT SANDRA CARTER." CP at 714.
¶ 6 DOC afforded Parmelee a hearing in front of a hearing officer to address the infraction. At the hearing, Parmelee tried to enter a written statement that explained his position on the infraction filed against him. He also submitted a request for DOC employees to respond to written questions, including questions regarding Carter's sexual orientation. The hearing officer refused to permit the questions because "`they [were] designed to question the integrity of staff and not addressing the guilt or innocents [sic] of the offender.'" Br. of Resp't at 4 (citing CP at 722-36).[4] The hearing officer found Parmelee guilty of the infraction, punishing him with 10 days of disciplinary isolation and 10 days without privileges. Parmelee's punishment did not affect or extend his current sentence.
¶ 7 On December 27, 2005, Parmelee filed a complaint for libel, slander, due process violations, First Amendment violations, malicious prosecution, and retaliation[5] against several DOC employees.[6] He sought monetary, declaratory, and injunctive relief.[7] After *1098 DOC employees answered the complaint, Parmelee filed a motion for judgment on the pleadings. DOC employees opposed the motion and filed a cross-motion to dismiss the lawsuit. The superior court commissioner considered the motions without oral argument and entered a memorandum opinion on October 3, 2006, granting DOC employees' motion while denying Parmelee's.
¶ 8 Parmelee filed a motion to revise the commissioner's ruling, which the trial court denied. He continued to file subsequent motions for revision and reconsideration, all of which the trial court denied.[8] He then filed a notice of appeal on November 27, 2006. Although there is no evidence in the record showing that Parmelee served notice of his appeal to DOC employees, they timely filed a response with this court. In addition, we permitted the American Civil Liberties Union of Washington (ACLU) to file an amicus curiae brief, addressing the facial validity of Washington's criminal libel statute, RCW 9.58.010 and .020. DOC employees chose not to address the constitutionality of RCW 9.58.010 or .020.

ANALYSIS

I. Standard of Review
¶ 9 Parmelee filed a motion for judgment on the pleadings under CR 12(c), and DOC employees filed a motion to dismiss for failure to state a claim upon which relief may be granted under CR 12(b)(6). We review a trial court's dismissal of a claim under either CR 12(b)(6) or CR 12(c) de novo. Burton v. Lehman, 153 Wash.2d 416, 422, 103 P.3d 1230 (2005); Suleiman v. Lasher, 48 Wash.App. 373, 376, 739 P.2d 712 (a motion to dismiss for failure to state a claim (CR 12(b)(6)) and a motion for judgment on the pleadings (CR 12(c)) raise identical issues), review denied, 109 Wash.2d 1005 (1987). Dismissal under CR 12 is appropriate only if it is beyond doubt that the plaintiff cannot prove any set of facts to justify recovery. Burton, 153 Wash.2d at 422, 103 P.3d 1230; Suleiman, 48 Wash.App. at 376, 739 P.2d 712. In making this determination, a trial court must presume that the plaintiff's allegations are true and may consider hypothetical facts that are not included in the record. Burton, 153 Wash.2d at 422, 103 P.3d 1230. It is under this standard that we must review the issues raised on appeal.

II. Constitutionality of Washington's Criminal Libel Statute On Its Face
¶ 10 Parmelee first challenges the constitutionality of Washington's criminal libel statutory scheme, RCW 9.58.010 and .020, under which DOC punished him for the language in his letter to Superintendent Clarke. He alleges that the statute is facially unconstitutional under Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). Therefore, Parmelee contends that the superior court erred when it dismissed his claims under CR 12(b)(6) and found that DOC may rightly rely on chapter RCW 9.58 as basis for its actions against him.
¶ 11 Although Parmelee did not challenge the constitutionality of RCW 9.58.010 and .020 below, we may consider manifest constitutional errors for the first time on appeal. RAP 2.5(a)(3). An error is manifest if it has practical and identifiable consequences in the trial at issue. State v. WWJ Corp., 138 Wash.2d 595, 603, 980 P.2d 1257 (1999). We believe that the constitutionality of Washington's criminal libel statutory scheme has practical and identifiable consequences in this case, particularly in light of the long-standing United States Supreme Court precedent declaring criminal libel statutes unconstitutional under its First Amendment jurisprudence See, e.g., Garrison, 379 U.S. 64, 85 S.Ct. 209. We are therefore compelled to address whether Washington's criminal libel statutory scheme is unconstitutional under United States Supreme Court precedent.

*1099 A. Criminal Libel and First Amendment Jurisprudence
¶ 12 In order to properly analyze the constitutionality of Washington's criminal libel statutory scheme, a brief review of defamation law in the context of First Amendment jurisprudence is necessary. To begin, New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), was a turning point for defamation law in the United States. There, the Supreme Court held that civil sanctions could not be imposed based on defamatory statements made about a public official unless such statements were false and made with "actual malice." New York Times, 376 U.S. at 279, 84 S.Ct. 710. It defined "actual malice" as making a statement "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." New York Times, 376 U.S. at 279-80, 84 S.Ct. 710. The Supreme Court reasoned that "debate on public issues should be uninhibited, robust, and wide-open, and . . . may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." New York Times, 376 U.S. at 270, 84 S.Ct. 710.
¶ 13 In the same year, the Supreme Court decided Garrison, wherein it extended principles set forth in New York Times to the criminal context. In Garrison, the State convicted a district attorney under Louisiana's criminal libel statute for issuing a disparaging statement concerning the judicial conduct of eight judges. Garrison, 379 U.S. at 65, 85 S.Ct. 209. The Louisiana Supreme Court affirmed the conviction, rejecting the defendant's contention that the statute unconstitutionally breached his freedom of expression. Garrison, 379 U.S. at 67, 85 S.Ct. 209. But the United States Supreme Court reversed, finding Louisiana's criminal libel statute infringed, on protected speech. Garrison, 379 U.S. at 77, 85 S.Ct. 209.
¶ 14 Specifically, the Garrison Court held that Louisiana's criminal libel statute did not meet constitutional muster because it punished false statements concerning public officials made without "actual malice." Garrison, 379 U.S. at 78, 85 S.Ct. 209. It further held that a statute is manifestly unconstitutional if it fails to provide truth as an absolute defense to criminal liability:
Truth may not be the subject of either civil or criminal sanctions where discussion of public affairs is concerned. And since . . . "erroneous statement is inevitable in free debate, and . . . it must be protected if the freedoms of expression are to have the `breathing space' that they `need . . . to survive' . . .," only those false statements made with the high degree of awareness of their probable falsity demanded by New York Times may be the subject of either civil or criminal sanctions. For speech concerning public affairs is more than self-expression; it is the essence of self-government.
Garrison, 379 U.S. at 74-75, 85 S.Ct. 209 (quoting New York Times, 376 U.S. at 271-72, 84 S.Ct. 710).
¶ 15 Following Garrison, several courts have declared various criminal libel statutes unconstitutional for failing to limit criminal liability to statements made regarding public officials with actual malice. See, e.g., Mangual v. Rotger-Sabat, 317 F.3d 45 (1st Cir. 2003) (holding Puerto Rico's criminal libel statute facially unconstitutional because it did not require the New York Times and Garrison standard of actual malice be proven in order for a statement disparaging a public figure to be successfully prosecuted); I.M.L. v. State, 61 P.3d 1038 (Utah 2002) (holding Utah's criminal libel statute infringed on a substantial amount of constitutionally protected speech by punishing false statements regarding public figures made without knowledge or recklessness and true statements regarding public figures); Ivey v. State, 821 So.2d 937, 949 (Ala.2001) (holding Alabama's criminal libel statute unconstitutional because it did not conform to the New York Times and Garrison "actual malice" requirement), overruled on other grounds by Ex parte Bell, 978 So.2d 33 (Ala.2007).[9] Until *1100 now, Washington courts have not addressed the constitutionality of its criminal libel statute under Garrison.

B. Constitutionality of Washington's Criminal Libel Statute Under Garrison

¶ 16 Washington courts presume statutes to be constitutional. State v. Thorne, 129 Wash.2d 736, 769-70, 921 P.2d 514 (1996). The party challenging a statute bears the burden of proving beyond a reasonable doubt that it does not satisfy constitutional standards. Thorne, 129 Wash.2d at 769-70, 921 P.2d 514. "Wherever possible, it is the duty of this court to construe a statute so as to uphold its constitutionality." State v. Reyes, 104 Wash.2d 35, 41, 700 P.2d 1155 (1985). Nevertheless, we "cannot press statutory construction to the point of disingenuous evasion even to avoid a constitutional question." Miller v. French, 530 U.S. 327, 341, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (quoting United States v. Locke, 471 U.S. 84, 96, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985)). A statute's plain reading must make the interpretation reasonable. Soundgarden v. Eikenberry, 123 Wash.2d 750, 757, 871 P.2d 1050, cert. denied, Soundgarden v. Gregoire, 513 U.S. 1056, 115 S.Ct. 663, 130 L.Ed.2d 598 (1994). And finally, in considering a facial challenge, we analyze the statutory language itself and do not rely on the facts of the case. City of Seattle v. Webster, 115 Wash.2d 635, 640, 802 P.2d 1333 (1990), cert. denied, 500 U.S. 908, 111 S.Ct. 1690, 114 L.Ed.2d 85 (1991).
¶ 17 RCW 9.58.010[10] defines criminal libel. Under that provision, exposure of any living person or the memory of the dead to hatred, contempt, ridicule or obloquy, or injury to a business relationship is a gross misdemeanor. RCW 9.58.010; see also 16A WASHINGTON PRACTICE: TORT LAW AND PRACTICE, § 19.1, at 2-3 (3d. ed.2006). RCW 9.58.020 establishes a presumption that statements falling into the RCW 9.58.010 classifications are malicious. It states:
Every publication having the tendency or effect mentioned in RCW 9.58.010 shall be deemed malicious unless justified or excused. Such publication is justified whenever the matter charged as libelous charges the commission of a crime, is a true and fair statement, and was published with good motives and for justifiable ends. It is excused when honestly made in belief of its truth and fairness and upon reasonable grounds for such belief, and consists of fair comments upon the conduct of any person in respect of public affairs, made after a fair and impartial investigation.
RCW 9.58.020.
¶ 18 A plain reading of RCW 9.58.020 reveals that Washington's criminal libel statutory scheme does not meet minimum constitutional standards under Garrison. Specifically, RCW 9.58.020 is unconstitutional because it does not justify excuse from prosecution (1) false statements made without actual malice or (2) true statements made without good motive or intent. See Garrison, 379 U.S. at 78, 85 S.Ct. 209.
¶ 19 Again, in Garrison, the Supreme Court explicitly held that the First and Fourteenth *1101 Amendments prohibit criminal punishment for false speech under statutes that do not require a showing of actual malice. Garrison, 379 U.S. at 67, 85 S.Ct. 209. This is precisely what Washington's criminal liable statute does: it permits punishment for false statements not made with actual malice. See Garrison, 379 U.S. at 67, 85 S.Ct. 209. A speaker may face prosecution under Washington's statute if she makes a false statement unless it was "honestly made in belief of its truth and fairness and upon reasonable grounds for such belief, and consists of fair comments upon the conduct of any person in respect of public affairs, made after a fair and impartial investigation." RCW 9.58.020. This standard in no way comports with the "actual malice" standard set forth in Garrison. Garrison, 379 U.S. at 67, 85 S.Ct. 209; New York Times, 376 U.S. at 279-80, 84 S.Ct. 710.
¶ 20 Likewise, the Garrison Court explicitly held that the First and Fourteenth Amendments absolutely prohibit punishment of truthful criticism where discussion of public affairs is concerned. Garrison, 379 U.S. at 74, 85 S.Ct. 209. Contrary to this absolute rule, RCW 9.58.020 justifies true statements when a person publishes them with "good motives and for justifiable ends." Thus, because RCW 9.58.020 permits punishment of true statements not made with good motives or for justifiable ends, it does not survive constitutional scrutiny. See Garrison, 379 U.S. at 67, 73-74, 85 S.Ct. 209. In fact, the Garrison Court cited Washington's criminal libel law as an example of the type of statute that failed constitutional scrutiny. Garrison, 379 U.S. at 70 n. 7, 85 S.Ct. 209.
¶ 21 It is clear, therefore, that Washington's criminal libel statutory scheme does not meet the constitutional standards demanded under Garrison because it permits prosecution of persons for making false statements without actual malice and/or making true statements without good motive or intent. See Garrison, 379 U.S. at 73-74, 85 S.Ct. 209.
¶ 22 Neither party addressed whether either the statute or the application of Garrison was limited to public figures. But because Garrison spoke only in terms of public figures being prosecuted, we also address an alternative basis for holding the statute unconstitutional as it pertains to private citizens. We examine both overbreadth and vagueness. We do this even in light of DOC and the attorney general refusing to address the constitutionality of the statute in either their briefing or at oral argument.

C. Overbreadth of Washington's Criminal Libel Statutory Scheme
¶ 23 The Washington State Supreme Court has previously summarized Washington's overbreadth doctrine:
A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities. The First Amendment overbreadth doctrine may invalidate a law on its face only if the law is "substantially overbroad." In determining overbreadth, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct."
City of Seattle v. Huff, 111 Wash.2d 923, 925, 767 P.2d 572 (1989) (internal citations omitted) (quoting City of Houston v. Hill, 482 U.S. 451, 458, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), appeal dismissed & cert. denied, 483 U.S. 1001, 107 S.Ct. 3222, 97 L.Ed.2d 729 (1987)).
¶ 24 As noted above, Washington's criminal libel statutory scheme, RCW 9.58.010 and .020, is facially unconstitutional because it prohibits true speech and false speech made without actual malice. For these same reasons, Washington's criminal libel statutory scheme is alternatively unconstitutional for overbreadth. Case law in several state and federal jurisdictions support this result.
¶ 25 For example, in Tollett v. United States, 485 F.2d 1087 (8th Cir.1973), the Eighth Circuit held that 18 U.S.C. § 1718 was unconstitutional, reasoning that it punished protected speech. Specifically, the Eighth Circuit reasoned that, among other things, the statute did not include an "actual malice" requirement. Tollett, 485 F.2d at 1097-98. Further, it found that the statute failed to distinguish between libel relating to private figures and libel relating to public figures. Tollett, 485 F.2d at 1097. Therefore, *1102 the Eighth Circuit held that 18 U.S.C. § 1718 was facially overbroad and thus unconstitutional. Tollett, 485 F.2d at 1097-98.
¶ 26 Similarly, in Fitts v. Kolb, 779 F.Supp. 1502 (D.S.C.1991), the district court held that South Carolina's criminal libel statute was facially overbroad. There, the criminal libel statute made reference to malice, but only in the context of "malicious intent." Fitts, 779 F.Supp. at 1515. The district court found that "malicious intent" was not synonymous with the "actual malice" standard from New York Times. Fitts, 779 F.Supp. at 1515. It reasoned that absent the "actual malice" requirement, the statute permitted punishment for the publication of protected speech. Fitts, 779 F.Supp. at 1515. Thus, the district court held that South Carolina's criminal libel statute was facially overbroad and thus unconstitutional. Fitts, 779 F.Supp. at 1516.
¶ 27 Likewise, in I.M.L. v. State, 61 P.3d 1038, the Utah Supreme Court held that Utah's criminal libel statute infringed on a substantial amount of constitutionally protected speech-because it punished false statements concerning public figures made without regard for truth of the statements or whether the speaker made them knowingly or recklessly. Therefore, the Utah Supreme Court held that the statute was overbroad based on its plain language, and, thus was unconstitutional. I.M.L., 61 P.3d at 1048.
¶ 28 In addition, the Alaska Supreme Court declared that Alaska's criminal libel statute was facially overbroad in Gottschalk v. State, 575 P.2d 289 (1978). Under Alaska's statute, truth was not an absolute defense. Rather, true statements concerning public officials or public figures were protected only if the speaker made such statements with good intent. Gottschalk, 575 P.2d at 296. Thus, Alaska's criminal libel statute punished protected speech. Gottschalk, 575 P.2d at 296. Accordingly, the state supreme court held that the statute was facially overbroad. Gottschalk, 575 P.2d at 296.
¶ 29 Several other jurisdictions have declared criminal libel statutes unconstitutional on the basis of overbreadth for the same reasons. See, e.g., United States v. Handler, 383 F.Supp. 1267, 1280 (D.Md.1974) (holding a defamation statute unconstitutionally overbroad because it failed to immunize truthful speech or include an actual malice requirement); State v. Helfrich, 277 Mont. 452, 457, 922 P.2d 1159 (1996) (holding Montana's criminal libel statute facially overbroad because it "impermissibly require[d] the defendant to prove that the material, even if true, was communicated in good faith and for justifiable ends.").
¶ 30 Although decisions from other jurisdictions do not bind us, such decisions nevertheless provide well-reasoned guidance in determining whether Washington's criminal libel statutory scheme is facially overbroad. Similar to the aforementioned statutes, RCW 9.58.010 and .020 punish true speech and false statements made without actual malice. Therefore, we choose to follow the guidance of other jurisdictions and deem the statutory scheme facially overbroad and, thus, unconstitutional.[11]

D. Vagueness of Washington's Criminal Liable Statutory Scheme
¶ 31 "A statute is unconstitutionally vague if [it] does not (1) define the criminal offense with sufficient definiteness such that ordinary persons understand what conduct is proscribed or (2) provide ascertainable standards of guilt to protect against arbitrary enforcement." State v. Stevenson, 128 Wash.App. 179, 188, 114 P.3d 699 (2005). A statute is indefinite "if persons of common intelligence must necessarily guess at its meaning and differ as to its application." State v. Glas, 147 Wash.2d 410, 421, 54 P.3d *1103 147 (2002). When analyzing a statute for vagueness, a reviewing court examines the context of the enactment as a whole, giving the statutory language a "sensible, meaningful, and practical interpretation" to determine whether it gives fair warning of the proscribed conduct. City of Spokane v. Douglass, 115 Wash.2d 171, 180, 795 P.2d 693 (1990). The fact that some terms in the statute are undefined does not necessarily render the statute unconstitutionally vague. Douglass, 115 Wash.2d at 180, 795 P.2d 693. "For clarification, citizens may resort to the statements of law contained in both statutes and in court rulings which are `[p]resumptively available to all citizens.'" Douglass, 115 Wash.2d at 180, 795 P.2d 693 (quoting State v. Smith, 111 Wash.2d 1, 7, 759 P.2d 372 (1988) (alteration in original)).
¶ 32 Amicus contends that RCW 9.58.020 is vague because speech is excused from prosecution under the statute if it consists of fair comments. While RCW 9.58.020 may be unconstitutionally vague insofar as it includes the phrase, "consists of fair comments," we need not decide vagueness on these grounds. Rather, RCW 9.58.020 is void for vagueness because of its use of the term "malicious." See Fitts, 779 F.Supp. at 1515-16. We find this is an alternative basis for holding Washington's criminal libel statutory scheme unconstitutional.
¶ 33 In Fitts, the South Carolina District Court relied on New York Times when it held that South Carolina's criminal libel statute was overbroad and vague in violation of the First and Fourteenth Amendments. Fitts, 779 F.Supp. at 1518. The South Carolina criminal libel statute stated:
[a]ny person who shall with malicious intent originate, utter, circulate or publish any false statement or matter concerning another the effect of which shall tend to injure such person in his character or reputation shall be guilty of a misdemeanor. . . .
Fitts, 779 F.Supp. at 1508.
¶ 34 The Fitts court reasoned that the statute's use of the term "malicious" could create confusion with the term "malice" as used in New York Times. Fitts, 779 F.Supp. at 1515. In other words, "malicious intent" as used in South Carolina's statute could be confused with the New York Times' "actual malice" standard, which denotes knowledge of the defamatory falsity or reckless disregard for whether the statement was true or false. Fitts, 779 F.Supp. at 1514-15, accord New York Times, 376 U.S. at 279-80, 84 S.Ct. 710. Thus, the statute was inherently vague because it created a potential confusion between the common law "malice" standard and the New York Times "actual malice" standard. Fitts, 779 F.Supp., at 1515-16, accord I.M.L., 61 P.3d at 1044 (stating that the "common law definition of `malice' is quite different from the `actual malice' contemplated by the United States Supreme Court").
¶ 35 Again, we find the Fitts reasoning persuasive. RCW 9.58.020 is void for vagueness because it includes the term "malicious" without reference to "actual malice" as required under New York Times. See Fitts, 779 F.Supp. at 1515-16. A person of common intelligence may guess that "malicious" in RCW 9.58.020 refers to the common law meaning of malice as opposed to the New York Times "actual malice" standard. See Fitts, 779 F.Supp. at 1515-16. Thus, RCW 9.58.020 is unconstitutionally vague.

III. Constitutionality of Washington's Criminal Libel Statute As Applied to Parmelee
¶ 36 Parmelee also argues that Washington's criminal libel statutory scheme is constitutionally invalid insofar as it purports to allow the state to punish prisoners for statements made in outgoing grievances to prison officials. But when a statute is facially unconstitutional, it follows that no set of circumstances exist in which the statute, as currently written, can be constitutionally applied. City of Redmond v. Moore, 151 Wash.2d 664, 669, 91 P.3d 875 (2004), accord City of Houston v. Hill, 482 U.S. 451, 459, 107 S.Ct. 2502, 96 L.Ed.2d 398 ("Criminal statutes must be scrutinized with particular care . . . those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." (Internal citations omitted)), appeal dismissed & cert. *1104 denied, 483 U.S. 1001, 107 S.Ct. 3222, 97 L.Ed.2d 729 (1987).
¶ 37 In any event, the record is insufficient for us to determine whether RCW 9.58.010 and .020 were unconstitutionally applied to Parmelee. He did not challenge the constitutionality of the statutory scheme in the trial court below. Aside from actual infraction and letter, the record contains no evidence or testimony surrounding the circumstances of Parmelee's infraction. Although we may address constitutional claims of manifest error not raised below, if the "record from the trial court is insufficient to determine the merits of the constitutional claim, then the claimed error is not manifest and review is not warranted." WWJ Corp., 138 Wash.2d at 602, 980 P.2d 1257.
¶ 38 Nevertheless, DOC employees seem to argue that Parmelee's infraction referencing RCW 9.58.010 was proper because Parmelee was in DOC custody when the hearing examiner infracted him. They rely on Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987), to support this argument.[12]
¶ 39 In Turner, the United States Supreme Court articulated the standard for reviewing the constitutionality of prison regulations. It stated that a regulation is constitutional when it is "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89, 107 S.Ct. 2254. Whether a prison regulation is reasonable turns on four factors: (1) the rational relationship between the right and the limitation, (2) the reasonableness of the limitation, (3) the impact accommodation would have on the prison environment, and (4) the absence of readily available alternatives. Turner, 482 U.S. at 89-90, 107 S.Ct. 2254.
¶ 40 Division One of this court applied the Turner test in a similar matter involving Parmelee. In In re Parmelee, 115 Wash. App. 273, 284, 63 P.3d 800 (2003), review denied, 151 Wash.2d 1017, 92 P.3d 779 (2004), Parmelee submitted multiple grievances wherein he used vulgar language and threatened the prison staff.[13]Parmelee, 115 Wash. App. at 277-280, 63 P.3d 800. After a disciplinary hearing, the hearing officer found Parmelee guilty of a G-301 infraction for defiance/insolence/abuse. Parmelee, 115 Wash.App. at 277-78, 63 P.3d 800.[14] G-301 was defined in the Inmate Information Handbook as "[m]aking flagrant, public statements which are degrading, ridiculing, abusive, insolent, defiant, obscene, and/or which promote disorder." Parmelee, 115 Wash.App. at 277, 63 P.3d 800. Parmelee appealed to the administrative hearing examiner, who affirmed the hearing officer. Parmelee, 115 Wash.App. at 280, 63 P.3d 800. He was punished with 10 days in disciplinary segregation for each infraction, totaling 20 days in segregation. Parmelee, 115 Wash.App. at 280, 281, 63 P.3d 800.
¶ 41 In his appeal, Parmelee argued that his First Amendment right to free speech was violated when he was punished for making insolent, abusive, and threatening comments about staff in an administrative grievance. Parmelee, 115 Wash.App. at 280, 63 P.3d 800. Applying Turner, Division One held that there was a legitimate reason for requiring all inmates to behave respectfully toward prison staff and limiting tension between guards and residents. Parmelee, 115 Wash.App. at 287, 63 P.3d 800. It also noted that there were other avenues available to Parmelee, namely that he could have used other words to properly address the problems he was attempting to address in his grievances. Parmelee, 115 Wash.App. at *1105 287, 63 P.3d 800. Division One concluded that the purpose of the grievance procedure was to bring issues to the attention of prison officials and not a forum to make disparaging, degrading, and abusive comments to staff. Parmelee, 115 Wash.App. at 287, 63 P.3d 800. Therefore, Division One held that G-301 complied with the Turner test. Under the facts of the case, the application of G-301 to Parmelee did not infringe on his constitutional right to free speech. Parmelee, 115 Wash.App. at 288-89, 63 P.3d 800.
¶ 42 But the facts and circumstances of In re Parmelee and this case are distinguishable. Namely, in the former, Parmelee challenged G-301, a prison regulation, as unconstitutional. Here, Parmelee is challenging RCW 9.58.010, as applied through former WAC 137-28-260(1)(517). The distinction is critical. If Parmelee were challenging former WAC 137-28-260(1)(517), Turner would apply. See Parmelee, 115 Wash.App. at 283-84, 63 P.3d 800 (recognizing that Turner is the appropriate test to apply, as opposed to the less stringent standard set forth by the Ninth Circuit in Bradley v. Hall, 64 F.3d 1276 (9th Cir.1995)).
¶ 43 Here, Parmelee is not challenging the validity of the prison regulation set forth in former WAC 137-28-360(l)(517); he is challenging the underlying criminal statute, RCW 9.58.010 and .020. As discussed above, Washington's criminal libel statutory scheme is facially unconstitutional. That it was applied through a prison regulation does not render it constitutional in the prison setting. Contrary to DOC employees' contention, Turner is inapposite under these circumstances.
¶ 44 This is not to say that an inmate's use of insolent, abusive, or scurrilous language in grievances and/or toward prison staff is not punishable. In In re Parmelee, for example, Division One upheld a prison regulation prohibiting such language. See In re Parmelee, 115 Wash.App. at 288, 63 P.3d 800. Many other courts have upheld prison regulations prohibiting libelous language in grievances. See, e.g., Hale v. Scott, 371 F.3d 917, 919-20 (7th Cir.2004) (holding that language that is otherwise punishable is not shielded from disciplinary action merely because it appears in a grievance); Gibbs v. King, 779 F.2d 1040, 1045 (5th Cir.1986) (holding that the prison regulation furthered legitimate interests, as the clear purpose of the rule was "to prevent the escalation of tension that can arise from gratuitous exchanges between inmates and guards and to enable employees to maintain order without suffering verbal challenges to their authority"), cert. denied, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986); Hadden v. Howard, 713 F.2d 1003, 1005 (3rd Cir.1983) (upholding a disciplinary sanction under a prison regulation for a prison inmate who wrote "unfounded, slanderous and derogatory statements" about prison staff in a grievance).
¶ 45 For example, had DOC employees in this case issued Parmelee a general infraction under WAC 137-28-220(l)(202) for "[a]busive language, harassment [sic] or other offensive behavior directed to or in the presence of staff, visitors, inmates, or other persons or groups," then perhaps the regulation would be constitutionally sound under Turner. But these are not the facts before us now.
¶ 46 Parmelee was issued a serious infraction under former WAC 137-28-260(1)(517) for "[c]omitting any act that is a misdemeanor under local, state, or federal law that is not otherwise included in these rules" and DOC chose RCW 9.58.010. As discussed above, RCW 9.58.010 and .020 fail constitutional scrutiny and thus cannot be the basis for an infraction under former WAC 137-28-260(l)(517). Therefore, we hold that DOC employees' reliance on Turner is unconvincing.
¶ 47 In conclusion, we need not determine whether Washington's statutory scheme is unconstitutional as applied to Parmelee because the statutory scheme is facially unconstitutional. Moreover, even if we wanted to address whether the statutes are unconstitutional as applied to Parmelee, the record is insufficient to properly decide this issue. Thus, we cannot address whether Washington's criminal libel statutory scheme is unconstitutional as applied to Parmelee in this case. Likewise, we cannot address whether *1106 Parmelee's freedom of speech or substantive due process rights were violated because the record is insufficient to make those determinations. WWJ Corp., 138 Wash.2d at 602, 980 P.2d 1257. Nor do we address whether procedural due process was violated because Parmelee abandoned that claim at oral argument.

IV. Retaliation Claim
¶ 48 Finally, Parmelee contends that he stated a cognizable retaliation claim and thus the trial court erred in dismissing it under CR 12(b)(6). The trial court refused to address Parmelee's retaliation claim, stating that he failed to establish the requisite requirement that he suffered "atypical and significant hardship." CP at 87.
¶ 49 To begin, Parmelee is correct that he was not required to establish an "atypical and significant hardship" as a result of the infraction to establish a retaliation claim under the First Amendment. See, e.g., Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir.1995). Thus, the trial court erred when it reasoned that Parmelee had to establish an "atypical and significant hardship" to go forward with his retaliation claim. See Rhodes, 408 F.3d at 567.
¶ 50 To prevail on a retaliation claim under 42 U.S.C. § 1983, Parmelee carries the burden to establish that DOC employees retaliated against him for exercising his constitutional rights; that the retaliatory action chilled the exercise of his First Amendment rights; and that the retaliatory action failed to advance legitimate penological goals, such as preserving institutional order and discipline. Rhodes, 408 F.3d at 567-68. In addition, a court evaluates a retaliation claim in light of the deference afforded to prison officials. Pratt, 65 F.3d at 807.
¶ 51 Notwithstanding the unconstitutionality of Washington's criminal libel statutory scheme, Parmelee established a cognizable retaliation claim in his pleadings. Although he did not cite to § 1983 or case law supporting such a claim, he refers to the "retaliatory intent" of DOC employees repeatedly. See, e.g., CP at 698; see also CP at 694, 695, 703. Specifically, Parmelee alleged in his complaint:
49. Defendants acted in bad faith, evil motive, maliciousness and with retaliatory intent to chill, stop and prevent Parmelee from now or ever in the future, make [sic] statements or complaints critical of DOC staff or policy.
CP at 698. This language constitutes a claim for retaliation. Parmelee pleaded facts sufficient to state a claim for which relief may be granted. Dismissal is appropriate only if it appears beyond doubt that the plaintiff cannot prove any set of facts that would justify recovery. See CR 12(b)(6); CR 12(c). Here, based on his pleadings, Parmelee could prove facts that would justify recovery.
¶ 52 First, Parmelee alleged that the language used in his grievance was not libelous and was therefore protected by the First Amendment. He alleged that DOC retaliated against him for pursuing litigation against DOC officials and making statements critical of DOC staff and policy. He also alleged that DOC employees' actions failed to advance legitimate penological goals. In addition, he alleged that DOC's actions did not comply with its internal policy that "[n]o letter is to be censored to eliminate opinions critical of Department policy or Department employees." CP at 695. Finally, Parmelee alleged that DOC retaliated against him because it did not issue his infraction until nearly three months after he attempted to send the letter to DOC Secretary Clarke, around the time he was actively pursuing litigation against prison officials. Although timing does not establish a prima facie case of retaliation, in some circumstances it may suggest retaliatory actions. See Pratt, 65 F.3d at 808.
¶ 53 When taken together, and assuming that Parmelee's allegations are true, dismissal was inappropriate. We hold that the trial court erred when it dismissed this claim. See Burton, 153 Wash.2d at 422, 103 P.3d *1107 1230; Suleiman, 48 Wash.App. at 376, 739 P.2d 712.

V. ATTORNEY FEES
¶ 54 Parmelee seeks attorney fees for the first time on appeal, under 42 U.S.C. § 1988,[15] which authorizes an award of attorney fees to the prevailing party in proceedings in vindication of civil rights. Parmelee is not entitled to attorney fees on appeal. He will only be entitled to attorney fees under 42 U.S.C. § 1988 if on remand, his attorney successfully litigates the retaliation claim under 42 U.S.C. § 1983.
¶ 55 We hold that Washington's criminal libel statute is facially unconstitutional and is likewise unconstitutional for overbreadth and vagueness. We vacate the infraction based on the unconstitutional statute. We reverse the trial court's dismissal under CR 12(b)(6) and remand for further proceedings at which Parmelee may raise his claims for damages against DOC for violating his First Amendment rights, violating substantive due process, and retaliating against him.
We concur: VAN DEREN, C.J., and ARMSTRONG, J.
NOTES
[1] We note the appellant uses two different spellings of his first name: "Allan" appears in the captions and body of the pleadings but when he signs his name, he spells it "Allen." We will use the spelling "Allen" in this opinion.
[2] The subject of the letter was: "RE: A Lesbian as a Superintendent Is A Solution For Disaster." CP at 717.
[3] The State has since promulgated new prison disciplinary rules, effective May 1, 2006. See WAC 137-25-030 (listing serious infractions).
[4] The record does not include minutes or verbatim report of proceedings from the administrative proceedings.
[5] In his original complaint, Parmelee also alleged libel and slander against the defendants, under chapter 9.58 RCW. He later withdrew his claims for libel and slander, arguing instead that chapter 9.58 RCW was superceded.
[6] The named defendants include: Robert O'Neel, Richard Monger, Harold Clarke, Eldon Vail, Lynn DeLano, Kathryn Bail, Carroll Riddle, Sandra Carter, John Palmer, John Aldana, Sandra Diimmel, Jerry McHaffie, Tina Adams, Nathan Cornish, Michael Erlenmeyer, "Unknown Others" and the community partners of each.
[7] According to DOC, Parmelee did not serve the complaint on the first DOC employee until June 15, 2006. Subsequent to that service, other DOC employees were either personally served or waived service. To date, according to DOC, Clarke, Vail, DeLano, Bail, Diimmel, and Erlenmeyer have not been served. Both parties have filed a plethora of motions regarding DOC staff and service.
[8] The State contends and there is no evidence in the record that Parmelee ever served DOC employees with the motions to revise or the motion for reconsideration.
[9] A few courts have struck down criminal libel statutes insofar as they pertain to public officials, public figures, or matters of public concern, without deciding whether those statutes were unconstitutional as applied to private individuals and/or private matters. Mangual, 317 F.3d at 66-67; People v. Ryan, 806 P.2d 935, 940 (Colo.) (holding the statute unconstitutional only as applied to constitutionally protected statements about public officials, public figures, or matters of public concern), cert. denied, 502 U.S. 860, 112 S.Ct. 177, 116 L.Ed.2d 140 (1991). Yet Washington's criminal libel statute does not distinguish between public and private individuals or issues and there seems to be no way to construe the statutory language to do so. Consequently, we must either wholly uphold the statute or wholly invalidate it as facially unconstitutional. See, e.g., Tollett v. United States, 485 F.2d 1087, 1097-98 (8th Cir.1973).
[10] RCW 9.58.010 provides:

Every malicious publication by writing, printing, picture, effigy, sign[,] radio broadcasting or which shall in any other manner transmit the human voice or reproduce the same from records or other appliances or means, which shall tend: 
(1) To expose any living person to hatred, contempt, ridicule or obloquy, or to deprive him of the benefit of public confidence or social intercourse; or
(2) To expose the memory of one deceased to hatred, contempt, ridicule or obloquy; or
(3) To injure any person, corporation or association of persons in his or their business or occupation, shall be libel. Every person who publishes a libel shall be guilty of a gross misdemeanor.
[11] A minority of courts have upheld criminal libel statutes in circumstances distinguishable from those here. See People v. Heinrich, 104 Ill.2d 137, 150-51, 83 Ill.Dec. 546, 470 N.E.2d 966, 972 (1984) (upholding criminal libel state that was aimed at fighting words and neither a public plaintiff nor a public issue was involved); see also Phelps v. Hamilton, 59 F.3d 1058, 1072, 1073 (10th Cir.1995) (applying Kansas law and finding the statute ambiguous, but interpreting the statute to include an "actual malice" requirement based on the assumption that the state legislature "only intend[ed] to criminalize unprotected speech."). It also should be noted that while Phelps was pending, the Kansas legislature amended its statute to require "actual malice." KAN. STAT. ANN. § 21-4004.
[12] Although we find Turner inapposite, we briefly address it because DOC employees relied so heavily on Turner in their briefing and oral argument.
[13] Specifically, Parmelee referred to a corrections officer in one grievance as a "piss-ant officer," and "an asshole." He also requested that DOC "[f]ire this asshole before someone reacts to his attempt to provoke violently." Parmelee, 115 Wash.App. at 276-77, 63 P.3d 800. In another grievance, Parmelee stated, "fire this prick because shitheads like him shouldn't be around prisoners." Parmelee, 115 Wash.App. at 279, 63 P.3d 800. In that second grievance, he also warned that the officer should be fired "before his attitude gets him fucked up." Parmelee, 115 Wash.App. at 279, 63 P.3d 800.
[14] The hearing examiner also found Parmelee guilty of making a threat, in violation of S-207. Parmelee, 115 Wash.App. at 279, 63 P.3d 800.
[15] 42 U.S.C. § 1988(b) provides: "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . ., the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."