197 P.3d 1211 (2008)
STATE of Washington, Respondent,
v.
Edison ALPHONSE, Appellant.
No. 58449-9-I.
Court of Appeals of Washington, Division 1.
December 29, 2008.
*1213 Thomas Marshal Curtis, Snohomish County Prosecutor, Everett, WA, for Respondent.
Susan F. Wilk, Washington Appellate Project, Seattle, WA, for Appellant.
AGID, J.
¶ 1 Edison Alphonse appeals his convictions for felony and misdemeanor telephone harassment. He challenges the sufficiency of the evidence, asserting that RCW 9.61.230 must be construed to require proof that he had the intent to harass, intimidate, torment, or embarrass when he initiated the call. He also contends that the terms "to embarrass," "lewd," "lascivious," "indecent," and "obscene" render the statute unconstitutionally overbroad on its face and vague as applied to his conduct, and that as applied, the statute violated his First Amendment right to lawfully petition a government official for redress of grievances. Finally, he challenges the trial court's order banishing him from the city of Everett as a condition of his sentence.

FACTS
¶ 2 In March of 2004, Everett police officer Matt Meyers investigated a complaint made by Nina Reeves, who reported that Alphonse had been sending her harassing emails. Reeves was a married woman, who had a previous relationship with Alphonse and eventually became pregnant. After the relationship ended and Reeves reconciled with her husband, Alphonse contacted Reeves and asserted that he wanted to have a relationship with the child. Reeves told him she did not want him involved with the child, claimed that he was harassing her, and eventually contacted the Everett police.
¶ 3 Meyers called Alphonse's home in Olympia and spoke with a woman who answered the telephone. He told her that threats had been made from her computer, that Alphonse had been involved with Reeves, and that Alphonse threatened Reeves and her husband, and asked her to tell Alphonse to call him. Alphonse called Meyers back, told Meyers he was unaware of the investigation, and sent a written statement to Meyers, in which he denied threatening Reeves, suggested that her allegations were retaliatory, criticized the police department's handling of the investigation, and stated that he intended to sue. No charges were filed against Alphonse based on Reeve's complaint, and the case was closed. But Reeves did obtain a protection order against Alphonse, with which he complied.
¶ 4 In November 2005, six months after closing the investigation, Meyers received an email from Alphonse complaining about the investigation and threatening to sue the police department. In December 2005, he left an angry voice mail on Meyers' office phone in which, among other things, he told Meyers: "There was never any Matt Meyers. He never existed." and "You're dead anyway. You're dead any motherfucking way!" He also stated: "I will blow away 40 hundred cops over my kids dog. 40 hundred, let alone *1214 one, let alone one by the name of Matt Meyer." On January 11, 2006, Alphonse left two more voice mails in which he described sexual acts he wished to perform with Meyers' wife.[1] He also stated: "your daughters are in trouble.... Your daughters ... [and] your wifeall of them, all of them are in motherfucking trouble."
¶ 5 The State charged Alphonse with one count of felony telephone harassment and one count of misdemeanor telephone harassment. A jury found him guilty of both charges. The trial court sentenced him to a term of four months, ordered that he have no contact with Meyers and his family, and ordered that he "not appear in the city limits of the City of Everett" unless required for "legal or judicial reasons."

I. Proof of the Caller's Intent Under RCW 9.61.230
¶ 6 In our original opinion in this case, State v. Alphonse,[2] we rejected Alphonse's argument that Washington's telephone harassment statute, RCW 9.61.230, must be construed to require the State to prove that the caller had the intent to harass, intimidate, torment or embarrass at the time he placed the call, not at some point after the call was initiated. In so doing, we relied on our decision in City of Redmond v. Burkhart[3] and disagreed with Division II's decision in State v. Lilyblad.[4] The Supreme Court granted review in Lilyblad. It rejected the rationale of both Burkhart and the Court of Appeals' Lilyblad decision but agreed with its result.[5] It held that the telephone harassment statute "requires proof that the defendant formed the intent to harass the victim at the time the defendant initiates [sic] the call to the victim. As the trial court failed to properly instruct the jury as to this element of the crime, we reverse [Lilyblad]'s conviction."[6] Because the trial court had instructed the jury in a way that implied that the requisite intent could be formed during the call,[7] the court reversed. It also allowed a retrial on the charges because the defendant conceded there was sufficient evidence to support the required intent finding presented at trial.[8]
¶ 7 On October 1, 2008, the Supreme Court granted Alphonse's petition for review and remanded this case to us for reconsideration in light of its Lilyblad decision. We have done so and, while we recognize that the court has rejected the Burkhart rationale on which we relied in our original decision, we affirm Alphonse's conviction on another ground.
¶ 8 In our original decision, we considered Alphonse's argument that the "to convict" instruction was infirm because it did not require the jury to find that he formed the intent to harass when he made the calls. We rejected that argument on the ground that he requested the instruction on which he based his argument. We held that the invited error doctrine barred his challenge to the instruction.[9] Because Alphonse cannot challenge *1215 the instruction, the premise on which the Supreme Court reversed the conviction in Lilyblad is absent. As the court held in Boyer, even where the challenge to the jury instruction raises a constitutional issue, the courts will not consider it if the defendant himself proposed the instruction.[10]
¶ 9 In addition, to the extent that Alphonse's challenge to the sufficiency of the evidence can be seen as somehow separate from his legal challenge to the "to convict" instruction, the evidence in this case leaves no doubt about when he formed the intent to harass and threaten Officer Meyers. The tapes of his message begin, continue and end with his expressions of immense ill will toward Meyers and his expressed intention to harm him and his family. The jury heard those tapes and transcripts of them were in evidence. There is no question that their verdict would have been the same even if the "to convict" instruction had required them to find that Alphonse had formed the intent to harass, intimidate, torment, or embarrass Meyers at the time he made the calls.

II. Facial Overbreadth: Intent to Embarrass[11]
¶ 10 Alphonse next contends that the court's "to convict" instruction was erroneous because it permitted the jury to convict him if the jury found that he made the calls with intent to "embarrass." He argues that because similar language was found unconstitutionally overbroad in City of Seattle v. Huff,[12] the court cannot instruct the jury to convict on this basis. But as the State correctly points out, Huff did not hold that the language intent to "embarrass" in a telephone harassment ordinance was overbroad; rather the court chose to concur with the City's concession that "embarrass" should be stricken from the ordinance and in fact expressed doubts that this was constitutionally mandated.[13] And, as the State also points out, we have since re-evaluated the constitutional sweep of the term "embarrass" as used in RCW 9.61.230 and held that the term does not render the statute unconstitutionally overbroad.[14]

III. Lawful Petition to Redress Grievances

¶ 11 Alphonse argues that prosecuting him for making calls that were a lawful petition to a government official for redress of grievances violated the First Amendment. He contends that the "vague allusions and sexual references" that may have affronted Meyers were not the sole or primary purpose of making the calls. Rather, he argues, he was seeking to lawfully redress his grievances and cannot be prosecuted for doing so. Alternatively, he argues that the trial court was required to instruct the jury that it had to find that the calls were made solely to harass and the failure to do so requires reversal.
¶ 12 The First Amendment provides aggrieved citizens the right to petition the government for redress and protects a significant amount of verbal criticism and challenge directed at police officers.[15] In reviewing a claim that a statute as applied infringes on First Amendment rights, we conduct an independent review of the record to decide if the speech is unprotected.[16]
¶ 13 Alphonse asserts that the calls made to Meyers in his official capacity as a police officer and the messages left on his police department voice mail were primarily complaints *1216 about Meyers' investigation of Reeves' harassment allegations. He cites parts of the message in which the caller criticized Meyer for informing his wife that he impregnated another woman, voiced frustration that Meyers did not inform him that the investigation was concluded, expressed his belief that the investigation was racially motivated, and claimed that the unfounded investigation prevented him from seeing his son born. Alphonse contends that the fact that these grievances may have been "interspersed" with offensive language does not take them out of the realm of protected speech.
¶ 14 In support of this contention, he cites to a footnote in State v. Dyson[17]suggesting that applying RCW 9.61.230 to a citizen's calls to a public official might be unconstitutional. But as we held in Dyson, the statute "regulates conduct implicating speech, not speech itself" by requiring an intent to harass, intimidate, torment or embarrass when the speech is uttered.[18] Indeed, the footnote upon which Alphonse relies states: "such telephone calls [including those to a public official] would not fall within the purview of the subsection unless the caller had the requisite intent."[19]
¶ 15 Applying the statute here did not violate Alphonse's First Amendment rights. While Alphonse may have been legally voicing disapproval about the way in which Meyers handled the investigation, once he used speech to harass, intimidate, torment or embarrass Meyers, his conduct became criminal. By threatening to harm and kill Meyers, and by using obscene language and vulgar descriptions of sexual acts he threatened to perform on his wife to demean and humiliate Meyers, he demonstrated a criminal intent to harass, intimidate, torment and embarrass. Thus, prosecuting him for making such calls did not violate his First Amendment right to petition the government to redress grievances.[20]
¶ 16 Alternatively, Alphonse argues that we should reverse and remand with instructions that the jury must find that the calls were made solely to harass and that he had a constitutional right to petition the government to redress grievances.[21] He argues that by not being so instructed, the jury may have improperly considered constitutionally-protected speech in reaching its verdict. He asserts that failure to provide this instruction was not harmless error because "none of the alleged criminal acts can fairly be extrapolated from the constitutionally-protected context of a citizen complaint to redress a grievance." He notes that the alleged threat to kill was made "in the same breath as" the criticism of Meyer as an incompetent investigator and the Everett Police Department as corrupt.[22]
¶ 17 But the "to convict" instructions here specifically required a finding of criminal intent, including an intent to harass and a true threat to kill. An additional instruction defined "true threat" to exclude those "said in jest, idle talk, or political argument."[23] And *1217 our review of the record shows that a reasonable juror could easily separate the discernable threats made here from any legitimate complaints. A further limiting instruction was not required.

IV. Overbreadth: Lewd, Lascivious, Indecent and Obscene Speech

¶ 18 Alphonse argues that the misdemeanor portion of RCW 9.61.230 is unconstitutionally overbroad because the terms "lewd, lascivious, indecent, and obscene" are not statutorily defined and other definitions result in criminalizing protected speech. A statute is void as overbroad if its prohibitions extend beyond protected free speech activities and no means exist by which to sever its unconstitutional applications.[24] In Dyson, we rejected a similar overbreadth challenge to the inclusion of these terms in RCW 9.61.230(1). We first noted that the statute regulates conduct implicating speech, not speech itself, and that the speech component is clearly directed against specific conduct.[25] We also concluded that because the statute contains a criminal intent element and "the level of constitutional protection given to `lewd, lascivious, profane, indecent, or obscene words or language' is minimal at best," the impact on protected speech is insubstantial.[26]
¶ 19 Alphonse argues these terms are too subjective, and a person could be convicted for making a legitimate complaint to the government if a jury finds that he used lewd, lascivious, indecent or obscene language because such a complaint may be considered "tormenting" or "harassing." Dyson rejected a similar argument that the statute prohibited legitimate complaints when "swear words" were used because the focus of the statute is on the caller's intent, not the listener's subjective perception.[27] Thus, under Alphonse's scenario, the caller would only be convicted if the jury found the caller intended to torment or harass.
¶ 20 To "complain" is not synonymous with to "torment" or "harass," as Alphonse suggests. One may certainly voice a legitimate complaint without resorting to speech that rises to the level of tormenting or harassing the recipient. As we recognized in In re Personal Restraint of Parmelee, one may be "held accountable for the degrading, abusive language [one chooses] to use in the exercise of his right [to voice a grievance]."[28] And here, as discussed above, Alphonse used offensive language precisely to harass, intimidate and torment Meyers by making threats to Meyers' life and sexually demeaning his wife with vulgar descriptions of lewd acts. In doing so, he demonstrated a criminal intent that clearly went beyond criticizing a public official.
¶ 21 Contrary to Alphonse's contentions, United States v. Popa[29] does not compel a different result. In Popa, the federal circuit court held that a federal telephone harassment statute was unconstitutionally overbroad as applied to calls made to a United States Attorney in which the defendant criticized him and called him derogatory names. But neither the statute nor the facts addressed in Popa are at issue here. Popa was prosecuted under 47 U.S.C. § 223(a)(1)(c), which prohibits making a telephone call "without disclosing [one's] identity and with intent to annoy, abuse, threaten, or harass any person at the called number or who receives the communications." He made telephone calls in which he called the United States attorney "a negro," and "a whore, born by a negro," and accused him of "violating the rights in court of the white people."[30] *1218 The court concluded that "[i]nsofar as the intents to annoy, to abuse, or to harass were implicated, the statute fails intermediate scrutiny as applied to Popa's conduct."[31]
¶ 22 The Popa court's focus was on the statute's inclusion of speech not at issue here. Washington's statute does not include speech that annoys or abuses, and while it does contain an intent to harass, it also requires that such intent be accompanied by either (1) lewd, lascivious, profane or obscene words, (2) suggestions of lewd or lascivious acts, or (3) threats of injury.[32] The federal statute has no comparable additional requirement. Here, Alphonse's intent to harass was unquestionably accompanied by lewd and profane language, suggestions of lewd acts and threats of injury. Thus, unlike the federal statute, the Washington statute sufficiently narrows speech that harasses.
¶ 23 Alphonse further contends that his suggestion of consensual intercourse with Meyers' wife was "an entirely legal act" and was therefore constitutionally protected speech. But as we held in Dyson, this type of speech, which was made over the telephone with the intent to harass, intimidate, torment or embarrass the officer is afforded minimal constitutional protection.[33] In so holding, we reiterated the long-recognized principle that the First Amendment does not protect certain classes of speech: the lewd and obscene, the libelous, the insulting or "fighting words`those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.'"[34] Our review of the transcript indicates that Alphonse was not merely suggesting a legal act of consensual intercourse, but sought to demean Meyers' wife with obscene and lewd language, and thereby humiliate and torment Meyers. These words unquestionably "by their very utterance inflict[ed] injury," and are not within the realm of protected speech. Alphonse fails to show that the statute is overbroad on its face.
¶ 24 Finally, Alphonse urges us to reconsider Dyson, in light of the Supreme Court's later decision in City of Bellevue v. Lorang.[35] In Lorang, the court held that Bellevue's telephone harassment ordinance was unconstitutionally overbroad because it included "profane" speech, which is speech that is critical of religion and protected by the First Amendment.[36] Because Lorang did not address the issue raised in Dyson or in this appeal, we see no reason not to adhere to our reasoning in Dyson.

V. Vagueness

¶ 25 Alphonse argues that the misdemeanor portion of the statute proscribing "lewd, lascivious, indecent or obscene" words is unconstitutionally vague as applied to his conduct because he must guess whether his use of certain words is "indecent," "lewd," or "lascivious." A statute is "`void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'"[37] We analyze vagueness claims under the Fourteenth Amendment due process test, which requires the challenger to demonstrate beyond a reasonable doubt that the statute either (1) fails to sufficiently define the offense so that ordinary people can understand what conduct is proscribed, or (2) fails to provide ascertainable standards of guilt to protect against arbitrary enforcement.[38]
¶ 26 Determining whether a statute sufficiently defines an offense "does not demand *1219 impossible standards of specificity or absolute agreement."[39] For a statute to be unconstitutional, its terms must be "`so loose and obscure that they cannot be clearly applied in any context.'"[40] The statute's requirement that the defendant have a specific intent may also defeat a vagueness challenge.[41] Both the United States Supreme Court and the Washington State Supreme Court have held that the word "obscene" is not unconstitutionally vague.[42] Our courts have also commonly defined the terms "indecent" and "obscene."[43]
¶ 27 Alphonse argues that because some of the words he used may be deemed by some to be "indecent," "lewd" or "lascivious," but may be commonly used by others, a person must guess whether using these words would constitute criminal conduct. But common use of these words is not equivalent to ignorance of their offense nature. As discussed above, Alphonse used obscene language here precisely so that he could offend, humiliate and torment Meyers. The record is also undisputed that he used language "suggesting the commission of any lewd or lascivious act," which is clearly prohibited by the statute.[44] His claim that he was unsure whether using language fell within the statutory prohibitions is neither logical nor credible. Additionally, the statute includes a specific element which further serves to dispel any vagueness concerns.[45]
¶ 28 Nor has Alphonse demonstrated that the statute poses a danger of arbitrary or selective enforcement. To do so, he must show that the statute invites an inordinate amount of police discretion.[46] Alphonse argues that because police and prosecutors could charge a person who seeks to legitimately complain about government conduct with making harassing calls, the statute may be used to chill protected speech. But he fails to demonstrate how protected speech will be subject to an inordinate amount of police discretion when the State may only charge those complaints that are made with criminal intent. Because it includes an intent element, RCW 9.61.230 defines the proscribed conduct in reference to the caller, not the recipient, and thereby contains sufficient guidelines to prevent arbitrary enforcement.[47]

VI. Banishment Order

¶ 29 Banishment orders encroach on an individual's constitutional right to *1220 travel, which includes the right to travel within a state.[48] Because of the constitutional implications, courts apply strict scrutiny in reviewing a banishment order.[49] To survive such review, the order must be narrowly tailored to serve a compelling governmental interest.[50] In making this determination, we consider the following nonexclusive factors: (1) whether the restriction is related to protecting the safety of the victim of or witness to the underlying offense, (2) whether the restriction is punitive and unrelated to rehabilitation, (3) whether the restriction is unduly severe and restrictive because the defendant resides or is employed in the area from which he is banished, (4) whether the defendant may petition the court to temporarily lift the restriction if necessary, and (5) whether less restrictive means are available to satisfy the State's compelling interest.[51]
¶ 30 In State v. Schimelpfenig, the court held that an order banishing a murder convict from Grays Harbor County failed strict scrutiny because the order was not narrowly tailored to serve its stated purpose, which was to prevent the victim's relatives from being reminded of the defendant.[52] The court noted that a more narrowly tailored restriction, such as an order prohibiting contact with the families, could sufficiently protect the victim's family from being reminded of their loss.[53] The court also suggested that other countywide or jurisdictional prohibitions may be appropriate but that "the propriety of such restrictions must turn on the facts of each case."[54]
¶ 31 Applying the factors here, we hold that the trial court's banishment order does not survive strict scrutiny. The restriction is related to protecting the safety of the victim and other police officers Alphonse included in his harassing phones calls, which has been found to be a compelling State interest.[55] It is not unduly severe and restrictive because Alphonse neither lives nor works in the city of Everett. But less restrictive means were available to serve the State's interest, and the restriction was unrelated to rehabilitation. Finally, other than permitting him to appear for court hearings related to this offense, the order did not allow Alphonse to petition the court to temporarily lift the restriction.
¶ 32 The most significant of these factors is the availability of less restrictive means to serve the court's stated purpose in issuing the order. Even though the purpose was a compelling State interest, the court did not narrowly tailor the order to serve that interest.[56] An order restricting contact with Meyers and his family, requiring Alphonse to stay a specified distance from Meyers, his home and the police department, and restricting any uninitiated contact with any member of the police force absent emergency circumstances could adequately serve the State's interest in protecting the victim.[57] We also note that cases in which such banishment orders have been upheld involved either brutal assaults of the victim, repeated harassment, or repeated violations of no contact orders, and banishment was the only *1221 effective means of protecting the victim.[58] The record here contains no such allegations of brutality, repeated offenses, or previous violations of orders restricting contact.[59]
¶ 33 We affirm the conviction, but vacate the banishment order and remand to the trial court to enter an order consistent with this opinion.
WE CONCUR: AGID, ELLINGTON, and SCHINDLER, JJ.
NOTES
[1] Exhibit 2 at 1 (transcript of voice mail recording, attached as Appendix B) ("[M]y dick is gonna stay long and I am gonna continuously keep dicking your motherfucking girl."); Appendix B at 2 ("And maybe one of these days when you're at work in that motherfucking cubicle sweating bricks, I might be pounding down that pussy ... Maybe one of these nights when I feel like getting some pussy, I might give [your wife] a call."); Appendix B at 3 ("I am gonna forever remain beating your motherfucking bitches down. Every time, open wide, open wide, open wide nigger because this big long ass long fucking dick is coming in, beating that motherfucking pussy down.").
[2] 142 Wash.App. 417, 174 P.3d 684 (2008), review granted, 164 Wash.2d 1021, 196 P.3d 134 (2008).
[3] 99 Wash.App. 21, 27, 991 P.2d 717 (2000).
[4] 134 Wash.App. 462, 464, 140 P.3d 614 (2006), aff'd, 163 Wash.2d 1, 177 P.3d 686 (2008).
[5] State v. Lilyblad, 163 Wash.2d 1, 177 P.3d 686 (2008).
[6] 163 Wash.2d at 13, 177 P.3d 686.
[7] The instruction read: "`make a telephone call' refers to the entire call rather than the initiation of the call." Id. at 5, 177 P.3d 686.
[8] Id. at 13, 177 P.3d 686.
[9] Alphonse, 142 Wash.App. at 429 & n. 21, 174 P.3d 684 (citing State v. Boyer, 91 Wash.2d 342, 345, 588 P.2d 1151 (1979), and State v. Berry, 129 Wash.App. 59, 71, 117 P.3d 1162 (2005), review denied, 158 Wash.2d 1006, 143 P.3d 829 (2006)).
[10] State v. Boyer, 91 Wash.2d 342, 345, 588 P.2d 1151 (1979).
[11] The remainder of our original opinion is unchanged.
[12] 111 Wash.2d 923, 767 P.2d 572 (1989).
[13] Id. at 928, 767 P.2d 572.
[14] Alexander, 76 Wash.App. at 836, 888 P.2d 175.
[15] U.S. CONST. amend. I (providing that Congress "shall make no law . . . abridging . . . the right ... to petition the government for a redress of grievances."); City of Houston v. Hill, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (ordinance prohibiting speech that "in any manner. . . interrupt[s] any policeman" overbroad for failing to limit speech to language that is not constitutionally protected), appeal dismissed, cert. denied, 483 U.S. 1001, 107 S.Ct. 3222, 97 L.Ed.2d 729 (1987).
[16] State v. Kilburn, 151 Wash.2d 36, 43-44, 50-52, 84 P.3d 1215 (2004).
[17] 74 Wash.App. 237, 245, n. 5, 872 P.2d 1115, review denied, 125 Wash.2d 1005, 886 P.2d 1133 (1994).
[18] Id. at 243, 872 P.2d 1115 (citing State v. Talley, 122 Wash.2d 192, 210, 858 P.2d 217 (1993)).
[19] Id. at 245, n. 5, 872 P.2d 1115 (emphasis added).
[20] See In re Personal Restraint of Parmelee, 115 Wash.App. 273, 287, 63 P.3d 800 (2003) (rejecting claim that vulgar language used in prison grievance was protected First Amendment speech because defendant was punished not for using grievance process, but for "degrading, abusive language he chose to use in the exercise of his right."), review denied, 151 Wash.2d 1017, 92 P.3d 779 (2004).
[21] Alphonse did not raise this argument in the trial court. We address it here only because it implicates First Amendment rights.
[22] Alphonse asserts in his reply that, unlike in Parmelee, here no threat was identified that distinguished it from the otherwise valid grievance and a limiting instruction was therefore required. But in Parmelee, the court simply concluded that the offensive language was not necessary to exercise the right to make a grievance and was therefore sanctionable. 115 Wash.App. at 287, 63 P.3d 800. And as discussed above, the threats made here were not necessary to convey Alphonse's grievances.
[23] See also Kilburn, 151 Wash.2d at 43, 84 P.3d 1215 (holding that interpreting felony harassment statute to prohibit only true threats avoids overbreadth concerns).
[24] Huff, 111 Wash.2d at 925, 767 P.2d 572 (citing Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 84 L.Ed. 1093 (1940)); City of Seattle v. Eze, 111 Wash.2d 22, 31, 759 P.2d 366 (1988).
[25] 74 Wash.App. at 243, 872 P.2d 1115 (citing State v. Talley, 122 Wash.2d 192, 210, 858 P.2d 217 (1993)).
[26] Id. at 244, 872 P.2d 1115.
[27] 74 Wash.App. at 245, n. 5, 872 P.2d 1115 (citing People v. Taravella, 133 Mich.App. 515, 350 N.W.2d 780, 782-84 (1984)); Huff, 111 Wash.2d at 930, 767 P.2d 572.
[28] 115 Wash.App. 273, 287, 63 P.3d 800 (2003), review denied, 151 Wash.2d 1017, 92 P.3d 779 (2004).
[29] 187 F.3d 672 (D.C.Cir.1999).
[30] Id. at 673-74.
[31] Id. at 678.
[32] RCW 9.61.230(a), (c).
[33] 74 Wash.App. at 244, 872 P.2d 1115.
[34] Id. (quoting Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942)); see also Kilburn, 151 Wash.2d at 42, 84 P.3d 1215 (reiterating that such speech is "of such slight social value as a step to truth that any benefit that may be derived from [it] is clearly outweighed by the social interest in order and morality.") (internal quotation marks omitted) (quoting Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 504, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)).
[35] 140 Wash.2d 19, 992 P.2d 496 (2000).
[36] Id. at 29, 992 P.2d 496.
[37] Seattle v. Eze, 111 Wash.2d at 26, 759 P.2d 366 (quoting O'Day v. King County, 109 Wash.2d 796, 810, 749 P.2d 142 (1988)).
[38] City of Spokane v. Douglass, 115 Wash.2d 171, 178, 795 P.2d 693 (1990); Lorang, 140 Wash.2d at 30, 992 P.2d 496.
[39] 115 Wash.2d at 179, 795 P.2d 693 (citing Kolender v. Lawson, 461 U.S. 352, 361, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)).
[40] Id. at 182, n. 7, 795 P.2d 693 (quoting Basiardanes v. Galveston, 682 F.2d 1203, 1210 (5th Cir.1982)).
[41] See City of Seattle v. Webster, 115 Wash.2d 635, 802 P.2d 1333 (1990), cert. denied, 500 U.S. 908, 111 S.Ct. 1690, 114 L.Ed.2d 85 (1991); State v. Stark, 66 Wash.App. 423, 434, 832 P.2d 109 (1992) (when statute requires specific criminal intent, "remaining terms are less vague or indefinite than they might otherwise be considered").
[42] Roth v. United States, 354 U.S. 476, 491, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); State v. J-R Distributors, Inc., 82 Wash.2d 584, 600-01, 512 P.2d 1049 (1973), cert. denied, 418 U.S. 949, 94 S.Ct. 3217, 41 L.Ed.2d 1166 (1974).
[43] See State v. Lansdowne, 111 Wash.App. 882, 891-92, 46 P.3d 836 (2002) (defining "indecent" as: "`not decent . . . altogether unbecoming: contrary to what the nature of things for which circumstances would dictate as right or expected or appropriate: hardly suitable: unseemly;'" defining "obscene" as: "`marked by violation of accepted language inhibitions and by the use of words regarded as taboo in polite usage.'") (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1147, 1557).
[44] RCW 9.61.230(1)(a). Alphonse refers to his use of the words "nigger, cracker, motherfucker and pussy," but neglects to mention the more explicit sexual references he used to describe sex acts he wished to perform with Meyers' wife, which would clearly fall within the statute.
[45] See Stark, 66 Wash.App. at 434, 832 P.2d 109. The additional cases appellant cited in the reply brief address federal and another State's statutes and are contrary to our decisions in Dyson and Alexander. See Alexander v. Johnson, 217 F.Supp.2d 780, 800-01 (2001) (invalidating Texas stalking statute that prohibited calls intended to "harass, annoy, alarm, abuse, torment, embarrass, or offend"), aff'd sub nom. Alexander v. Cockrell, 294 F.3d 626 (2002); Popa, 187 F.3d 672.
[46] Douglass, 115 Wash.2d at 181, 795 P.2d 693; Alexander, 76 Wash.App. at 841, 888 P.2d 175.
[47] See Alexander, 76 Wash.App. at 842-43, 888 P.2d 175.
[48] State v. Schimelpfenig, 128 Wash.App. 224, 226, 115 P.3d 338 (2005) (citing Shapiro v. Thompson, 394 U.S. 618, 630-31, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), overruled in part on other grounds by Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Eggert v. City of Seattle, 81 Wash.2d 840, 845, 505 P.2d 801 (1973)).
[49] Id. (citing Thompson, 394 U.S. at 634, 89 S.Ct. 1322).
[50] Id.
[51] Id. at 228-29, 115 P.3d 338.
[52] 128 Wash.App. 224, 226, 115 P.3d 338 (2005).
[53] Id.
[54] Id. at 230, 115 P.3d 338.
[55] Id. at 229, 115 P.3d 338.
[56] See id. (holding that even if interest advanced by banishment order was compelling, order was not narrowly tailored to serve that interest); see also Halsted v. Sallee, 31 Wash.App. 193, 197, 639 P.2d 877 (1982) (restraining order banning mentally unstable father from traveling north of a certain town not sufficiently tailored to serve State interest in protecting children).
[57] 128 Wash.App. at 230, 115 P.3d 338; see also Halsted, 31 Wash.App. at 197, 639 P.2d 877 (less restrictive order prohibiting communication or contact could have served State interest in protecting children from mentally unstable father).
[58] See, e.g., People v. Brockelman, 933 P.2d 1315 (Colo. 1997) (brutal assault and violation of restraining orders); Predick v. O'Connor, 260 Wis.2d 323, 336-37, 660 N.W.2d 1 (Wis.Ct.App.) (assault, stalking, harassment and repeated violations of no contact orders), cert. denied, 540 U.S. 1047, 124 S.Ct. 809, 157 L.Ed.2d 695 (2003); State v. Nienhardt, 196 Wis.2d 161, 537 N.W.2d 123 (Wis.Ct.App.) (repeated stalking and harassment), review denied, 540 N.W.2d 202 (1995).
[59] Arguably, Reeves' complaint alleging that Alphonse harassed her by email demonstrates that this was a repeated offense, but no charges were ever filed as a result of this complaint. Additionally, the record indicates that Alphonse complied with a protective order Reeves obtained against him after the case involving her complaint was closed.